to our final appeal of the day in case number 6, Minosa Echols v. Teresa Johnson and others, it's appeal number 22-32-30. Thank you, Your Honor. May I please the court? The district court gave the wrong jury instruction. That error infected trial from start to finish and it prejudiced my client, Minosa Echols. Mr. Echols deserves a chance to make his case to a jury that was properly instructed. This court should therefore reverse the judgment of the district court and remand this case for a new trial. I'll start with the court's legal error before turning to prejudice. And the legal error was a jury instruction requiring Mr. Echols to prove, quote, the defendant under consideration was aware of a strong likelihood that plaintiff would be seriously harmed as a result of an assault. The district court got this instruction from the Seventh Circuit's pattern jury instruction 7.16, which is titled Eighth and Fourteenth Amendments Failure to Protect Elements. That is the problem. The Eighth and the Fourteenth Amendments are governed or call for different standards with different elements. That's what the Supreme Court held in Kingsley in 2015. There, the court held that a Fourteenth Amendment plaintiff does not need to satisfy the Eighth Amendment's subjective intent standard. Instead, under the Fourteenth Amendment, the only subjective question concerns the defendant's state of mind with respect to his physical acts. So did the defendant intend to do the thing that he did? In Kingsley, for example, it was did he intend to discharge the taser or did it go off by accident? Beyond that, the analysis is purely objective. Were the defendant's intentional actions objectively unreasonable? Just last year in Kemp versus Fulton County, this court applied these principles from Kingsley to the Fourteenth Amendment Failure to Protect Context, like this one. And there, the court held, again, consistent with Kingsley, that the defendant must intend to carry out a certain course of actions or inaction. But at that point, the question is whether that course was objectively unreasonable. Would a reasonable official in the defendant's shoes have perceived the risk of harm under the circumstances? The district court, in instructing the jury that Mr. Echols had to prove that the defendants were subjectively actually aware of the risk of harm, the district court ignored Kemp. It ignored Kemp's core holding. It gave a jury instruction that was, frankly, outdated, and it was wrong on its face, and that was a court's legal error. If you accept for purposes of the question that the instruction was erroneous, that it included legal error along the lines, does the objective reasonableness standard, in your view, have to account for the manner in which, in this case, it would have been Mr. Rex wrote, in which he inflicted the injury on Mr. Echols? No. There's nothing in Kingsley or in any other case that suggests the defendant has to know the exact manner in which the ultimate harm came about. They have to be aware of the risk of harm, and there are cases suggesting that they have to know— they don't even have to know that the specific person inflicted harm on another specific person. They just have to know that there is a risk of harm that somebody will be injured by somebody else. But all of that is beside the point, except for the fact that—you make a good point, Your Honor, because that's exactly what the defendants did in this case. They focused on the trays under the table. That is not the crux of the analysis. Mr. Rex wrote could have used his fists instead of trays under the table. The exact manner how the harm came about is not especially relevant. Okay, so is your point of view then—your perspective is what's relevant is there was clear tension between these two individuals, and they were left together in the day room, and something could have happened that would have resulted in harm to Mr. Echols. Your Honor, I would say it has to be more concrete than something would have happened. It has to be a risk of harm, a physical injury. Sure, that's what we're talking about. Yes. Okay, so let me give you a hypothetical. So change the facts altogether, and let's suppose that Mr. Rex stood up and had somehow managed to get a marble and a slingshot. And he used the marble and the slingshot, and he shot it across the room and hit Mr. Echols and hurt him. How do you analyze—as a legal matter, what's the proper analysis of the objective reasonableness vis-à-vis the same name defendants? Your Honor, under Kingsley, the proper analysis is all of the facts known to the defendants would have alerted a reasonable official in their shoes of the risk of harm, not necessarily the risk that he would pull a marble out of his pocket and sling it across a room, but a reasonable official would have perceived this risk of harm and would have acted differently so that that harm did not come about. But again, in this case—so in other words, it's the facts known to the defendant analyzed through the perspective of a reasonable official in the defendant's shoes. Right, so on a fact pattern like that, wouldn't you expect the three defendants to say, what in the world did you expect me to do? Well, yes, Your Honor, but you have to consider— I wasn't thinking about a slingshot, no. But you talk about something completely out of the blue. This guy just stands up, and he has a marble, and he shoots a slingshot across the room. Your Honor, I think the problem in this case is it was not out of the blue. You have to consider all the circumstances known to the defendants. In this case, which brings me directly to prejudice, there are any number of steps along the way that a jury could— the jury could have concluded a reasonable official would have perceived this risk of harm, even if these specific defendants did not put two and two together. And that's just half the prejudice analysis. It also considers, for example, the arguments that the parties advance at trial. And in this case, to start with the parties' arguments, all it takes is one read through the trial transcript to see the emphasis, the constant emphasis the defendants placed on their lack of subjective knowledge. They argued they did not—they were not aware Rexroth would attack Echols. They did not know Rexroth had these trays under the table. None of the defendants knew. They had no knowledge. They simply did not know. These are things they argued in just their opening statement. And then after questioning every single witness at trial, questions meant to elicit information about the defendants' subjective knowledge, right on through to their closing arguments, they argued again. They had no knowledge, and they were not mind readers. And in fact, the defendants expressly criticized the idea of an objective standard. They told the jury, plaintiff wants you to use hindsight to say what the defendants should have known. That's right, should have known. They openly mocked that idea, but that is the standard. That's how this court put it in Thomas v. Dart last year. Well, let me ask you, if we agree with you that there was a legal error here because there are these two different standards, what do we need to do with Pittman and Miranda? Do we have to overrule Pittman where we found that, you know, we blessed this idea of, you know, the defendants' subjective belief, were they subjectively aware of a risk of harm to plaintiffs? And in Miranda, we talked about defendants knowing the consequences of their action, which is expressly, you know, not what Kingsley talks about. So what do we do? Your Honor, I would like to reserve some time for rebuttal, but I do have several answers to your questions about what to do with Pittman. And it's a good question because we did think a lot about it. The first question is, or the first answer is, there is no conceivable reason that I can think of why this court should look to Pittman instead of Kemp to resolve the issue. And if this court had to overrule Pittman to rule in favor of Mr. Echols, it would have done that in Kemp. But Kemp didn't even mention Pittman, didn't even cite Pittman. So there's no reason to think Pittman would have decided this case when Kemp was directly on point. It's more recent. It dealt with this exact kind of claim under the 14th Amendment, unlike Pittman, and it governs the issue. The second thing is Pittman, the instruction in Pittman was actually different. And this is a nuanced point, but I do think it's important. The instruction in Pittman required the defendants to have, quote, they knew of or strongly suspected facts showing the risk of harm. That is different than requiring subjective knowledge of the risk of harm itself because part of the objective analysis considers the facts known to the defendants as they would be interpreted by a reasonable official in their shoes. And another answer is that I think there may be cause to reconcile some of the language in Pittman with the language in Kemp, maybe with the language in Miranda, but it all needs to be read in light of Kingsley because they all flow directly from Kingsley. Pittman relied completely on Miranda. Miranda relied completely on Kingsley. And so to the extent they talk about some level of subjective intent or subjective knowledge, it has to be read in light of Kingsley's instruction that that goes only to their physical conduct and not the ultimate risk of harm. And if I may, I'd like to reserve the remainder of my time. Thank you. We'll give you a couple minutes. Thank you. Okay, Ms. Hanson, good afternoon. Good afternoon. May it please the Court. Christina Hanson on behalf of Defendants Appellees Teresa Johnson, Richard Logan, and Scott Wallace. This Court need not disturb the jury verdict in this case because the Court's instructions on the elements of Echols' failure to protect claim correctly directed the jury to consider whether each defendant was aware of a strong likelihood that Echols would be assaulted, which went to whether the defendants acted knowingly, purposely, or recklessly. This Court's post-Kingsley case law makes clear that under the objective standard, a defendant will be liable only for acting at least recklessly, which requires a showing that a specific defendant was on notice of a serious risk of harm to the detainee. And that is precisely what the Court instructed here, that they had to be on notice of a risk of harm. Even if the jury instruction improperly focused on defendants' subjective awareness, Echols was not prejudiced by that error. Kingsley makes clear that even under the objective reasonableness standard, when we look at the reasonableness of a defendant's actions, it's an objective inquiry that has to be made from the perspective of a reasonable officer on the scene, including what the officer knew at the time. So the arguments and the evidence would have been the same regardless of what the instruction was, because it was highly relevant to the case what these particular defendants knew when they were in the day room with Echols and Rex Rhodes. Should this case have been sent to the jury? Excuse me? Should this case have been sent to the jury? I don't think this case needed to go to a jury. Under any standard, there was no evidence that any of these defendants either were on notice of a risk of harm or failed to take reasonable measures under the circumstances. If we were to reverse this case on the ground that the jury instruction is erroneous, was erroneous, and you filed a motion for summary judgment, should it be granted? I think it should be granted, but the court doesn't need to reverse on the basis of the instruction because the court can look at whether the plaintiff was prejudiced in this case and find that there was no prejudice to the plaintiff because of the evidence. Echols himself testified in this case that he never put any of these defendants on notice of a risk of harm. Rex Rhodes never threatened him, neither the day before the incident nor on the day of the incident, and so Echols did not convey that he had been threatened to any defendant or any other security officer. Now you're getting into facts that the jury would be well within its authority to see differently because there was the report that Brown took, and we don't know. It doesn't look like anybody else got to see the report. These other three officers had no—but the jury needs to think about that, talk about that. We know that there was this conversation that two of the officers had with Rex Rhodes, and we don't know what happened, who said what. Nobody can remember what they said. The jury, that's the jury's province. You're saying there's no other way to analyze this thing, but if the jury has the correct instructions, it is plausible. The jury may disagree with the state on this, on the issue of notice, being on notice. But even if we look at—first of all, there was no evidence. In fact, the evidence was to the contrary regarding the Brown report. No defendant was aware of the Brown report. There was no overlap between Security Therapy Aide Brown's—between his shift and the three defendants' shifts, and all three testified that they were not made aware of it. There was no evidence suggesting that they were on notice of it. In fact, like I said, the evidence was to the contrary. Second, if we look at the report itself, it does not state that there was a—that Rex Rhodes had threatened Echols. In fact, the report indicated that both residents were going to seek a compromise. There was nothing in the record—even Echols himself testified that he had never been threatened by Rex Rhodes. He never felt threatened. He never reported the threat. He never spoke to anybody other than Brown about the rooming assignment. He didn't have any conversations with any of these defendants about the rooming assignment. And so there simply was no evidence that they were on notice of any risk of harm. The evidence also showed that it wasn't—these defendants wouldn't have had any involvement in a rooming decision. The rooming committee decides where—what rooms residents would be placed in and who their roommates would be. And so up until the call button was pressed and these three defendants responded, they weren't even involved in any of the process of putting Rex Rhodes and Echols in the same room. And the evidence showed that they took reasonable steps based on the information that was available to them, what they knew at the time, to address any issues. They didn't just leave Rex Rhodes and Echols alone in a room. When the call button was pressed, they appeared. Johnson directed Mr. Rex Rhodes to move his things from the top bunk so that Echols could move in. And when he refused, she went and contacted the shift commander. She didn't have authority to move either of those residents into any other part of the facility without authority from the shift commander. So that's what she did. She went and called the shift commander. In the meantime, Echols and Rex Rhodes were not left alone. Two security therapy aides were with them. Logan was there and Wallace was there. And when there appeared to be some tension between the two, Logan stepped between them and separated them. Wallace had cleared the day room as a precautionary measure. We reviewed the trial evidence. In my mind, it's a question of what the jury does with the proper legal framework. The evidence in this case could, even under the higher standard, the evidence in this case could not have supported a verdict. And, in fact, the- So that's why I've asked the questions about whether you have to consider the manner in which the injury was inflicted because everything you just described factually seems accurate from the record. Absolutely no question there were three security aides that responded. There's no question they were separated. There was no question they were planning to go to the FOX unit, et cetera, et cetera. All that seems right to me. And that's why I ask the question, as a legal matter, does the objective reasonableness standard have to take account of the manner in which the harm was inflicted upon the plaintiff? In other words, is that relevant or not relevant legally? Well, it does to the extent of whether these defendants were aware that- whether they were aware- these defendants were not aware that there was a weapon available. The video evidence showed that- A weapon of any kind. Right. Whether it was a slingshot or a pillowcase with cafeteria trays or anything else. Yes. And even Kingsley makes clear that the reasonableness of the defendant's actions has to be looked at based on what they knew at the time, not with 20-20 hindsight. If they had known that there was a weapon available, they would have responded differently. But that was not known to anybody. Even Echols himself testified that he didn't know it was there. It wasn't visible. It was hidden earlier in the morning without anybody- And so the best counterpoint to that, which we'd benefit from hearing your response to, is, well, what about his fists? So there's clear tension in the room. They separated them. Let's try to get the temperature turned down on this. Let's get these guys out of the day room. Sure. The 14th Amendment requires only that defendants take reasonable measures to abate the risk of harm. They're not strictly liable for any harm that occurs. And here they did take reasonable measures. They're not even liable for negligence or gross negligence. They have to act recklessly, and none of the defendant's actions in this case were reckless. And so for that reason, the jury couldn't reach a different result than it did, and Echols was not prejudiced by the standards. The jury itself, after it had been excused from service, while sympathetic to the plaintiff and making clear that it wasn't finding against the plaintiff, stated that these defendants were simply not at fault. So for those reasons, unless the court has any further questions, we would ask that you affirm. Okay. Thank you very much, Ms. Hanson. Okay. We'll give you a couple minutes on rebuttal. Thank you, Your Honor. I appreciate it. I'll just make a few brief points. First, it still remains unclear to me how the defendants reconciled the district court's instruction with Kemp. I don't know if Kemp came up once during their opposing argument, but I don't understand how they can reconcile the two, which understandably is why we've been focusing on prejudice. Before I turn to prejudice, though, there is discussion of negligence and recklessness and intent. I think the best way, the most helpful way to think about what the standard is here, is what Castro said out of the Ninth Circuit and then what this court reiterated, which is something akin to reckless disregard. And what reckless disregard means in this context is that the defendant intentionally commits an act. He doesn't trip and fall. He doesn't drop the tape. He intentionally commits an act that ultimately causes harm, and a reasonable official in that circumstance would have foreseen this risk of harm. That is very much like the standard Kemp endorsed and Castro endorsed from the Ninth Circuit, and it's effectively the right standard we're asking for today. And then turning back briefly to prejudice, much of what I heard sounds like a great closing argument. It sounds like a great closing argument for the jury. To your point, Your Honor, the jury is tasked with deciding whether the defendant's intentional actions were objectively unreasonable. That's it. And at any number of steps along the way, a reasonable jury could have come to those conclusions in this case. They could have found that the defendants chose not to stop the move when an official in the circumstances, a reasonable official, would have. The defendants chose to handcuff only Mr. Echols, not Mr. Rexroth, who was much larger, who was left unhandcuffed, and who was free to maneuver around the room, feet from Mr. Echols, in fact, with a path directly open towards him. After everything that came before that, a reasonable jury could decide that that was objectively unreasonable and a reasonable official would have acted differently. And I see my time is up. Thank you, Your Honor. I appreciate it. Thanks to you, Ms. Hanson. Thanks to you. Is it Mr. Zudema? That's correct. You took this case, you and your firm, on a pro bono basis, correct? Yes, Your Honor. The Court very much appreciates that, your advocacy and that of your firm for taking this on. We benefit from that. And with that, we will stand in recess.